**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 10a0354n.06

No. 09-1806

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Jun 08, 2010**
LEONARD GREEN, Clerk

ROBERT BISGEIER, )
)
    Plaintiff-Appellant, )
)
v. )
)
MICHIGAN  DEPARTMENT  OF )
CORRECTIONS, et al, )
)
    Defendants-Appellees. )

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MICHIGAN

Before: CLAY, ROGERS, and COOK, Circuit Judges.

COOK, Circuit Judge.  In this section 1983 action, Plaintiff Robert Bisgeier appeals the district court's grant of summary judgment in favor of Defendants Correctional Medical Services, Inc., Judith Howze, D.O., Bency Mathai, M.D., Eddie Jenkins, M.C., Craig Hutchinson, M.D., Savithri Kakani, P.A., Beverly Sainz, P.A., and Kent Filsinger, P.A.  Because the record fails to show that any of the defendants acted with subjective, deliberate indifference to the plaintiff's serious medical needs, we affirm.

I.

On February 17, 2004, shortly before he was scheduled to surrender to the Michigan Department of Corrections ("MDOC") to serve a two- to twenty-year sentence, Bisgeier underwent

radical gastric bypass surgery, which led to the desired result—dramatic weight loss—as well as numerous complications, including renal failure, dehydration, malnourishment, anemia, hypokalemia, hypocalcemia, and severe weakness. Just over two months after the surgery, on April 28, 2004, he submitted to the MDOC and began serving his sentence. During his incarceration, Bisgeier received treatment for the various complications, as well as for a hernia he developed, from (among others) defendant medical providers Dr. Mathai, P.A. Kakani, Dr. Jenkins, and Dr. Howze, all of whom worked for defendant Correctional Medical Services, Inc. ("CMS") as independent contractors. CMS provides medical care to Michigan prisoners pursuant to contract with MDOC. Defendant Dr. Hutchinson serves as CMS's Senior Regional Medical Director responsible for selecting, orienting, and mentoring CMS primary-care providers in the region.

Paroled on December 14, 2006, Bisgeier brought this lawsuit alleging violations of 42 U.S.C. § 1983, accusing Defendants of violating his rights under the Eighth Amendment by acting with deliberate indifference to his serious medical needs. The district court granted summary judgment in Defendants' favor, and Bisgeier now appeals.

II.

On appeal, Bisgeier presses two arguments. First, he contends that the district court erred in granting summary judgment on his claim that Defendants acted with deliberate indifference by depriving him of necessary vitamins and failing to treat his hernia. Second, he asserts that in granting summary judgment, the district court ignored evidence that CMS policy prevented its

medical providers from freely exercising their medical judgment, causing them to disregard a course of treatment they otherwise considered necessary to meet Bisgeier's serious medical needs.

We review the district court's grant of summary judgment de novo, affirming if the evidence, viewed in the light most favorable to Bisgeier, demonstrates that no genuine issue exists as to any material fact and that Defendants are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Village of Oakwood v. State Bank & Trust Co.*, 539 F.3d 373, 377 (6th Cir. 2008) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

To succeed on a claim under § 1983, the plaintiff must show that the defendants' conduct (1) occurred under color of state law; and (2) deprived him of a right secured by the Constitution or the laws of the United States. 42 U.S.C. § 1983. "[D]eliberate indifference to the serious medical needs of a prisoner constitutes 'the unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment," *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citing *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)), and thus gives rise to a § 1983 claim.

Eighth Amendment deliberate indifference claims have both objective and subjective components. The objective component requires a prisoner to demonstrate a "sufficiently serious" medical need, *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)), while the subjective component requires showing that officials subject to suit possessed "a sufficiently culpable state of mind in denying medical care." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (6th Cir. 2004). Prison officials cannot be held liable for

deliberate indifference unless the prisoner establishes that the official "acted with reckless disregard for a substantial risk to the prisoner, that he drew the inference, and that he disregarded the risk." *Scott v. Ambani*, 577 F.3d 642, 648 (6th Cir. 2009).

A.

Bisgeier complains that Defendants failed to properly treat the vitamin deficiency that resulted from his gastric bypass surgery, arguing that the district court overlooked a genuine evidentiary dispute over whether P.A. Kakani actually ordered a vitamin supplement prescribed by his surgeon. He contends that his medical problems stemmed largely from his vitamin deficiency, and that a grievance he filed on March 4, 2005 establishes that (contrary to what the medical records show) Kakani did not, in fact, provide him with the necessary vitamins but instead told Bisgeier that his family needed to pay for them.

Assuming arguendo that Bisgeier's vitamin deficiency represents a "sufficiently serious" medical need to satisfy the objective component of an Eighth Amendment claim, his claim nevertheless fails because he cannot meet the subjective component. Bisgeier's March 4, 2005, grievance notwithstanding, the record stands devoid of evidence that Kakani (or anyone else) recklessly disregarded the risk that the vitamin deficiency presented to Bisgeier's health. Kakani and the other care providers constantly assessed Bisgeier's nutritional needs and responded with treatment. Early on in his incarceration, Kakani requested a recommendation from Bisgeier's bariatric surgeon regarding appropriate dietary care, including vitamin and mineral supplements, and

ordered a consultation with a dietician. Defendants repeatedly requested lab work to assess Bisgeier's nutritional health; ordered vitamin, mineral, and dietary supplements; and adjusted the orders over time in an effort to improve their overall effectiveness. Indeed, Bisgeier does not, and cannot, contend that Defendants refused to acknowledge his nutritional issues, instead disputing the efficacy of the treatment he received. But "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in state tort law." *Graham ex rel. Estate of Graham v. County of Washtenaw*, 358 F.3d 377, 385 (6th Cir. 2004) (quoting *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976)). In light of the extensive attention Defendants paid to his vitamin deficiency, Bisgeier cannot establish the subjective component of his Eighth Amendment claim.

Bisgeier similarly faults Defendants' treatment of his hernia, asserting that the district court ignored his evidence that, after acknowledging the seriousness of the problem, defendants Kakani and Mathai declined to order surgery, whispering to each other, within earshot of Bisgeier, that some third party (presumably CMS) would not permit anything to be done about the hernia.

Whatever the truth of this allegation, Bisgeier's claim fails because he cannot establish that Defendants recklessly disregarded the health risks posed by his hernia. Defendants detected the hernia in early 2005 and, assessing it, determined that it was not strangulated and was reducible. It remained in that state until Bisgeier's release. Defendants monitored the hernia for the duration of

Bisgeier's incarceration. Dr. Jenkins examined Bisgeier on January 24, 2006, but could not objectively verify his complaints of pain. When Bisgeier continued to complain of pain, P.A. Sainz provided him with an abdominal binder. After an examination on September 11, 2006, during which Bisgeier described the hernia as "mildly painful," P.A. Filsinger instructed Bisgeier to send a care request to Dr. Jenkins regarding the need for surgery, but Bisgeier never followed up. Notes from his consultation with Filsinger on November 28, 2006 contain no mention of hernia-related pain complaints. Bisgeier was paroled two weeks later.

In sum, the record shows that after diagnosing Bisgeier's hernia, Defendants remained attentive to his condition and provided treatment. Given Bisgeier's precarious condition due to his difficult recovery from gastric bypass surgery, the limited severity and treatable nature of the hernia, and Bisgeier's infrequent and mild complaints, Defendants ultimately declined to order surgery. Accordingly, the evidence at best demonstrates a disagreement over the proper course of treatment, which fails to rise to the level of a constitutional violation. *See Estelle*, 429 U.S. at 107; *Westlake*, 537 F.2d at 860 n.5.

B.

Next, Bisgeier focuses on testimony given by CMS executive Dr. Hutchinson regarding a four-tiered system employed by the company for determining what treatments qualified as "medically necessary." Dr. Hutchinson testified that CMS regularly instructed its primary care practitioners about their so-called "batting average" for referral authorizations, advising doctors to

keep their personal referral percentages close to the group average. Seizing on this testimony, Bisgeier argues that this CMS policy hamstrung his care providers, preventing them from authorizing referrals he needed and resulted in the denial of medically necessary treatment. Specifically, Bisgeier contends that adherence to this policy kept P.A. Kakani and Drs. Mathai and Jenkins from ordering surgery for his hernia and treating his vitamin deficiency.

As explained, Defendants' treatment of Bisgeier's hernia and vitamin deficiency did not violate the Eighth Amendment's ban on cruel and unusual punishment. To the contrary, Defendants monitored Bisgeier's conditions closely for his entire term of incarceration and remained attentive to his medical needs, providing treatment or writing medical orders for him on more than one hundred occasions between May 27, 2004, and December 14, 2006. Viewed as a whole, the record fails to disclose evidence of deliberate indifference. Moreover, Bisgeier failed to produce any colorable evidence that his care providers tailored his course of treatment to, or even knew about, CMS's supposed "batting average" policy. So even if Bisgeier could establish the policy's existence and that it held the potential for forcing care providers to recklessly ignore serious medical risks, his claim fails because he remains unable to show that Defendants applied the policy to him in a way that violated his Eighth Amendment rights.

III.

For these reasons, we affirm.