James SCOTT, Plaintiff,

v.

Audberto ANTONINI, M.D., Defendant.

Case No. 07–10459.

United States District Court,
E.D. Michigan,
Southern Division.

Feb. 15, 2011.

James Scott, Detroit, MI, pro se.

Randall A. Juip, Brian J. Richtarcik, The JuipRichtarcik Law Office, Detroit, MI, for Defendant.

*OPINION AND ORDER OVERRULING DEFENDANT ANTONINI'S OBJECTIONS TO REPORT AND RECOMMENDATION AND ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT*

MARIANNE O. BATTANI, District Judge.

Plaintiff James Scott filed this *pro se* § 1983 action alleging that Defendant Audberto Antonini denied him medical treatment in violation of the Eighth and Fourteenth Amendments while he was incarcerated by the Michigan Department of Corrections. Before the Court are Defendant Antonini's Objections to Report and Recommendation Denying Defendant's Motion for Summary Judgment (Doc. 82). For the reasons that follow, the Court **OVERRULES** Defendant's Objections, **ADOPTS** the Magistrate Judge's Report and Recommendation (Doc. 80), and **DENIES** Defendant's Motion for Summary Judgment Pursuant to Fed.R.Civ.P. 56 (Doc. 72).

## I. BACKGROUND

On January 29, 2007, pursuant to 42 U.S.C. § 1983, Plaintiff James Scott filed a complaint alleging that Dr. Audberto Antonini and three other doctors deprived him of his constitutional right to medical

treatment while he was serving a life sentence at the G. Robert Cotton Correctional Facility in Jackson, Michigan. (Doc. 1). Plaintiff contends that Defendant Antonini was deliberately indifferent to his medical needs that arose after he had undergone radiation treatment for prostate cancer. The Court referred this matter to Magistrate Judge Virginia S. Morgan for all pretrial proceedings pursuant to 28 U.S.C. § 636(b)(1)(B). (Doc. 10).

On February 29, 2008, 2008 WL 597833, the Court accepted Magistrate Judge Morgan's recommendation that Plaintiff's entire Complaint be dismissed. (Doc. 52). Plaintiff appealed the Court's dismissal to the Sixth Circuit. (Doc. 57). The Sixth Circuit affirmed the Court's ruling as to all the defendants except for Antonini and remanded the case for further proceedings on Plaintiff's deliberate indifference claim against Antonini. *Scott v. Ambani,* 577 F.3d 642 (6th Cir.2009).

After the remand, Defendant Antonini filed a motion for summary judgment under Rule 56. (Doc. 72). In the Report and Recommendation ("R & R"), Magistrate Judge Morgan recommended that the Court should deny Defendant's motion. (Doc. 80). The Magistrate Judge concluded that Plaintiff has shown a genuine issue of material fact as to whether he suffered a "sufficiently serious" medical need; whether Defendant subjectively disregarded Plaintiff's medical needs, and whether the alleged delay in treatment caused any serious medical injury. Defendant's timely Objections to that R & R are now before the Court. (Doc. 82).

## II. STANDARD OF REVIEW

In cases where a magistrate judge has submitted a report and recommendation, and a party has properly filed objections to it, the district court must conduct a *de novo* review of those parts of the report and recommendation to which the party

objects. 28 *U.S.C.* § 636(b)(1)(C). The district "court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." *Id.*

The requirement of *de novo* review "is a statutory recognition that Article III of the United States Constitution mandates that the judicial power of the United States be vested in judges with life tenure." *United States v. Shami,* 754 F.2d 670, 672 (6th Cir.1985). Accordingly, Congress enacted 28 U.S.C. § 636(b)(1) to "insure[ ] that the district judge would be the final arbiter" of a matter referred to a magistrate judge. *Flournoy v. Marshall,* 842 F.2d 875, 878 (6th Cir.1988).

## III. ANALYSIS

Defendant raises three objections to the R & R. First, he argues that there is not sufficient evidence from which a reasonable jury could conclude that Plaintiff's testicular lump and associated pain was a serious medical need. Second, Defendant contends that there is not sufficient evidence to show that he disregarded an excessive risk to Plaintiff's health and safety. Finally, Defendant claims that Plaintiff has brought forth no evidence to suggest that any alleged delay in treatment worsened his condition or caused any detrimental effects. Before addressing each objection, the Court reviews the applicable law concerning Plaintiff's "deliberate indifference" claim.

### Deliberate Indifference

■ The Eighth Amendment "forbids prison officials from 'unnecessarily and wantonly inflicting pain' on an inmate by acting with 'deliberate indifference' toward [his] serious medical needs." *Jones v. Muskegon County,* 625 F.3d 935, 941 (6th Cir.2010) (quoting *Blackmore v. Kalamazoo County,* 390 F.3d 890, 895 (6th Cir. 2004)). A Section 1983 claim asserting a

constitutional violation for denial of medical care has two components: an objective and a subjective. *Id.*

The objective component requires a plaintiff to establish the existence of a "sufficiently serious" medical need. *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)). The Sixth Circuit defined a "sufficient serious" medical need as one "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* (quoting *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir.2008)). Additionally, "the seriousness of a prisoner's medical needs 'may also be decided by the effect of delay in treatment.'" *Blackmore*, 390 F.3d at 898 (quoting *Hill v. Dekalb Reg'l Youth Det. Center*, 40 F.3d 1176, 1188 (11th Cir. 1994)).

The subjective element requires "an inmate to show that prison officials have a sufficiently culpable state of mind in denying medical care." *Jones*, 625 F.3d at 941 (quoting *Blackmore*, 390 F.3d at 895). Prison officials have a "sufficiently culpable state of mind" when they act with "deliberate indifference" to an inmates serious medical need. *Farmer*, 511 U.S. at 834, 114 S.Ct. 1970. To establish a prison official's "deliberate indifference," a plaintiff must show that the official: (1) subjectively knew of a risk to the inmate's health, (2) drew the inference that a substantial risk of harm to the inmate existed, and (3) consciously disregarded that risk. *Jones*, 625 F.3d at 941 (citing *Farmer*, 511 U.S. at 837, 114 S.Ct. 1970); *see also, LeMarbe v. Wisneski*, 266 F.3d 429, 435–36 (6th Cir. 2001).

**Objection # 1—Serious Medical Need**

To survive summary judgment on this issue, Plaintiff must show a question of fact regarding whether he had a serious medical need. He has made such a showing. It is well established that pain can be a "sufficiently serious" medical need for purposes of a deliberate indifference claim. *See, Boretti v. Wiscomb*, 930 F.2d 1150, 1154–55 (6th Cir.1991) (recognizing that "a prisoner who suffers pain needlessly when relief is readily available has a cause of action against those whose deliberate indifference is the cause of his suffering."); *Ralston v. McGovern*, 167 F.3d 1160, 1162 (7th Cir.1999) (reversing grant of summary judgment to prison guard who failed to provide pain medication to inmate); *McElligott v. Foley*, 182 F.3d 1248, 1257 (11th Cir.1999) ("[P]rison officials may violate the Eighth Amendment's commands by failing to treat an inmate's pain."); *Logan v. Clarke*, 119 F.3d 647, 649 (8th Cir.1997) (finding that "substantial back pain" was a serious medical need).

██ Here, about six months after he completed an extensive radiation treatment plan for prostate cancer (Doc. 72 Ex. A at 665, 686), Plaintiff made numerous reports to the prison medical staff that he was suffering from severe pain and that he found a new lump on his testes. (Doc. 72 at 2–9). Plaintiff's complaints of pain are chronicled in the grievance record (Doc. 77 Ex. L) and are corroborated by his affidavit (Doc. 77 Ex. P). Specifically, he complained of severe back and leg pain and was concerned that the newly discovered testicular lump (which was also painful) could be a sign that his cancer had returned. Also, Plaintiff contends Defendant's treatment notes do not accurately reflect the numerosity, nor the severity of his complaints. Plaintiff avers there were multiple occasions on which Defendant did not record his complaints of pain. (Doc. 72 at 7–9). Accordingly, a reasonable juror could conclude that Plaintiff's multiple complaints of severe and constant pain is a "sufficiently serious" medical need requiring medical treatment.

### Objection #2—Deliberate Indifference to Plaintiff's Serious Medical Need

■ Plaintiff has established a genuine issue of material fact as to whether Defendant knew of and disregarded an excessive risk to Plaintiff's health and safety. It is undisputed that Plaintiff was recovering from his radiation treatment under Defendant's care. As discussed above, Plaintiff alleges that Defendant knew of, but did not document several reports of his pain. To corroborate the existence of those complaints further, Plaintiff shows the Court records from prison nurses which indicate that he complained about his testicular lump and related pain. (Doc. 72 Ex. M). He also explains that the nurses presumably discuss recorded symptoms with the treating doctor before scheduled appointments. In particular, one of those records suggests that Defendant deliberately chose not to see Plaintiff despite having knowledge of his painful symptoms. (Doc. 72 Ex. M at 3). After multiple visits in which Plaintiff repeatedly complained of pain, Defendant did not provide Plaintiff with pain medication. Notably, shortly after Plaintiff left Defendant's care, he received pain medication from other treating doctors. (Doc. 72 Ex. K). Drawing all favorable inferences, Plaintiff has put forth enough evidence to suggest that Defendant knew of and disregarded excessive health and safety risks related to Plaintiff's post-radiation treatment condition. The ultimate resolution of that issue is for the jury to decide.

### Objection #3 Delay in Treating the Serious Medical Need

Defendant is not entitled to summary judgment on Plaintiff's deliberate indifference claim based on a "delayed treatment" theory. In the Sixth Circuit, to the extent a plaintiff premises a deliberate indifference claim on a delay in treatment, if the need for treatment "involves minor maladies or non-obvious complaints of a serious need for medical care, then a plaintiff must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir.2005) (quotations omitted). On the other hand, if the "need for medical care is obvious even to a lay person," then a plaintiff need not supplement with verifying medical evidence. *Id.*

Defendant's objection assumes Plaintiff has a minor, non-obvious complaint. From that assumption, Defendant concludes that Plaintiff has provided no evidence that the alleged delay in treating his newly found lump, or failure to prescribe pain medication, worsened Plaintiff's condition or caused additional harm. In fact, it was ultimately determined that Plaintiff's lump was a cyst, which had resolved on its own and has not reoccurred. (Doc. 82 Ex. A at 627). However, Plaintiff has introduced sufficient evidence which could support a finding that his medical concerns were obvious to a lay person.

■ Given Plaintiff's numerous complaints of pain, coupled with a newly discovered testicular lump and the fact that he was recovering from over thirty radiation treatments for his prostate cancer, a reasonable jury could conclude that he had an "obvious need for medical care." Therefore, Plaintiff is not required to supplement the record with additional medical evidence that his condition worsened. Under that scenario, the alleged delay in treatment was not Defendant's failure to diagnose or treat the lump, rather, it was the failure to treat his severe pain, whether that pain was caused by recent radiation treatments, his spinal condition, and/or the testicular lump. In the end, a jury must decide the detrimental effects of Plaintiff's delayed treatment. *See, Scott,* 577 F.3d at 648 ("Whether a prisoner has suffered unduly by the failure to provide

medical treatment is to be determined in view of the totality of the circumstances. In making this determination the trier of fact should consider the practicalities of the situation including the extent of the injury, the realistic possibilities of treatment, and the possible consequences to the prisoner of failing to provide immediate medical attention." (quotations omitted)); *see also, Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 829 (7th Cir. 2009) (collecting cases holding that "delays in treating painful medical conditions, even if not life-threatening, may support an Eighth Amendment claim.").

## IV. CONCLUSION

For the reasons stated above, the Court **OVERRULES** Defendant's Objections (Doc. 82), **ADOPTS** the Magistrate Judge's R & R (Doc. 80), and **DENIES** Defendants' Motion for Summary Judgment (Doc. 72).

**IT IS SO ORDERED.**

## *REPORT AND RECOMMENDATION DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. No. 78)*

VIRGINIA M. MORGAN, United States Magistrate Judge.

In this *pro se* 42 U.S.C. § 1983 case, Plaintiff James Scott, a prisoner in the custody of the Michigan Department of Corrections, alleges that he was denied medical treatment in violation of the Eighth and Fourteenth Amendments. The case is on remand from the Sixth Circuit Court of Appeals for further proceedings on Plaintiff's claim against Defendant Audberto Antonini, M.D. only.[1] Antonini has filed a motion for summary judgment, which is the matter presently pending before the court. For the reasons

discussed below, the court recommends **DENYING** Antonini's motion for summary judgment.

## I. Factual Background

At all relevant times Scott was incarcerated and in the custody of the MDOC. In early 2005, Scott was diagnosed with prostate cancer and he received radiation treatment that concluded on August 3, 2005. (Def.'s MSJ Ex. A, Pl.'s Medical Records p. 439, 665, 686 [hereinafter "Medical Records"]). Antonini was assigned to monitor Scott's condition post-radiation treatment. (Compl. ¶ 70).

On February 7, 2006, Scott reported to Dr. Molly Sullivan, his off-site oncologist, that he had a testicular lump. (Medical Records p. 663). There is no notation in the medical records that Scott was experiencing pain from the testicular lump but Scott alleged in his complaint that he told Dr. Sullivan about the testicular lump and she instructed him on how to monitor the lump. (Medical Records p. 663; Compl. ¶ 71). Dr. Sullivan did not recommend further examination or treatment for the testicular lump. (Medical Records p. 663).

On February 21, 2006, Scott submitted a health care request in which he complained about a lump in his scrotum that was causing him "great pain" and Nurse Joy Ryan responded to the request by scheduling Scott for "sick call" the next day. (Compl. Ex. 22, 2/20/06 Health Care Request; Medical Records p. 254). The examining nurse was unable to palpate the lump but Scott was instructed to discuss the lump with Antonini during his appointment on February 28, 2006. (Medical Records p. 375).

1. Since the time that Antonini treated Scott in prison, Antonini has been convicted of child pornography pursuant to Mich. Comp. Laws 750.145c(2) and his medical license has been suspended.

The progress notes from the February 28, 2006 appointment do not reference Scott's testicular lump pain. (Medical Records p. 374). Antonini noted that Scott complained of rectal bleeding and Antonini performed a rectal examination and a guaiac test. (Medical Records p. 374). Antonini recommended that Scott be seen by a gastro-intestinal specialist, undergo a colonoscopy, and have a follow up appointment in one month. (Medical Records p. 374). Although there is no note that Scott complained about his testicular lump at this appointment, Scott alleges in his complaint that he informed Antonini that he had pain from the testicular lump and had back and leg pain, and requested pain medication. (Compl. ¶ 76; Doc. No. 77, Pl.'s Resp. Ex. P, Scott Aff. ¶ 3). Antonini did not prescribe Scott pain medication and Scott "suffered in pain from 2/28/06 to 3/14/06 . . . ." (Doc. No. 77, Pl.'s Resp. Ex. P, Scott Aff. ¶ 5).

At a March 3, 2006 appointment, Scott was examined by an MDOC nurse and he complained of neck pain, sore throat, and dysphagia. (Medical Records p. 373). There is no indication that Scott complained of testicular lump pain at this appointment. The nurse scheduled Scott for an appointment with Antonini the following week, but Scott failed to show for that appointment. (Medical Records p. 373).

Antonini next saw Scott on March 28, 2006 regarding Scott's bowel complaints. (Medical Records p. 373). Antonini noted that Scott had not had a colonoscopy yet and entered another order for the procedure. (Medical Records p. 373). There is no note regarding testicular pain.

One month later, on April 28, 2006, Antonini again evaluated Scott and noted that he had "no new complaints" during the visit. (Medical Records p. 369). Scott contends that he told Antonini that he was "still in great pain" and needed pain medication. (Doc. No. 77, Pl.'s Resp. Ex. P, Scott Aff. ¶ 6). Antonini responded that Scott "was a strong man and that [he] did not need anything." (Doc. No. 77, Pl.'s Resp. Ex. P, Scott Aff. ¶ 6).

On May 3, 2006, Scott was examined by an MDOC nurse for a lump on his right eyelid, right eye pain, headache, testicular lump with pain and neck pain. (Medical Records p. 371). The nurse noted that she had reviewed Scott's case with Antonini, who told her that he would discuss the testicular lump pain and neck pain with Scott at his May 28, 2006 appointment at which time he was scheduled to discuss Scott's colonoscopy results with him. (Medical Records p. 371). Scott avers that Antonini told him that he did not have time to examine him and that he would examine Scott at his next appointment on May 28, 2006. (Doc. No. 77, Pl.'s Resp. Ex. P, Scott Aff. ¶ 6). The May 28, 2006 appointment did not occur as scheduled presumably because Scott still had not undergone a colonoscopy.

Scott was seen by a gastroenterologist on May 8, 2006. (Medical Records p. 656–57). Dr. Ullah noted that Scott complained of nodules along the left side of his testes but there is no notation that Scott complained of pain. (Medical Records p. 657).

Scott underwent a colonoscopy on June 12, 2006. (Medical Records p. 645). Scott was diagnosed with hemorrhoids and radiation proctopathy. (Medical Records p. 645). Antonini saw Scott on June 14, 2006 and noted that Scott had undergone a colonoscopy and had hemorrhoids and radiation proctopathy. (Medical Records p. 366). Antonini also noted that Scott's physical condition was "unremarkable" and there is no mention of testicular pain in his notes. (Medical Records p. 366).

Antonini next saw Scott on August 28, 2006, and Scott reported that he was suffering from constipation and had a painful

testicular lump. (Medical Records p. 365). Antonini found a one-centimeter, tender, hard mass in Scott's right testicle. (Medical Records p. 365). Antonini ordered ultrasound testing within two weeks and scheduled Scott to return to see him in one month. (Medical Records p. 365).

The ultrasound revealed that Scott's testes "showed normal homogenous echogenic patterns" and Scott's "epididymi were unremarkable." (Medical Records p. 429). The ultrasound did not reveal any abnormalities.

Antonini saw Scott again on November 13, 2006 and December 28, 2006. (Medical Records p. 246, 361). During the November visit, Antonini prescribed Scott Flomax, a drug that is used to treat symptoms of an enlarged prostate. (Medical Records p. 246). The December visit was cut-short by an emergency at the prison but and there is no indication in the medical records why Scott was scheduled to see Antonini that day. (Medical Records p. 361). December 28, 2006 was the last time that Antonini treated Scott before he filed the instant lawsuit on January 29, 2007.

## II. Procedural History

Scott's January 29, 2007 complaint alleged that Antonini and three other doctors deprived him of his constitutional right to medical treatment from 2002 to 2007, while Scott was incarcerated by MDOC. (Doc. No. 1, Compl.). On February 29, 2008, 2008 WL 597833, the Honorable Marianne O. Battani accepted this court's recommendations that Scott's complaint be dismissed in its entirety. (Doc. No. 52).

Scott appealed the court's dismissal to the Sixth Circuit Court of Appeals. (Doc. No. 57). The Sixth Circuit issued an opinion affirming the district court's ruling as to all the defendants except for Antonini and remanding the matter for further proceedings in connection with Scott's deliber-ate indifference claim against Antonini. *Scott v. Ambani*, 577 F.3d 642, 644 (6th Cir.2009).

## III. Standard of Review

The United States Court of Appeals for the Sixth Circuit has summarized the standard for summary judgment as follows:

> Summary judgment is appropriate if the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact such that the moving party is entitled to judgment as a matter of law. "The judge is not to weigh the evidence and determine the truth of the matter, but rather determine whether there is a genuine issue for trial."

*Totes Isotoner Corp. v. Int'l Chemical Workers Union Council/UFCW Local 664C*, 532 F.3d 405, 411–12 (6th Cir.2008) (internal citations omitted).

## IV. Analysis

An Eighth Amendment "deliberate indifference" claim consists of two components: an objective and a subjective. The objective component requires a plaintiff to demonstrate "a 'sufficiently serious' medical need such that [the plaintiff] is 'incarcerated under conditions posing a substantial risk of serious harm.' " *Ford v. County of Grand Traverse*, 535 F.3d 483, 495 (6th Cir.2008) (quoting *Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (6th Cir. 2004)). A medical need is objectively serious if it is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Blackmore*, 390 F.3d at 897 (quoting *Gaudreault v. Municipality of Salem*, 923 F.2d 203, 208 (1st Cir. 1990)).

The subjective component of a deliberate indifference claim requires the plaintiff

to show that the defendant had "a sufficiently culpable state of mind in denying [the plaintiff] medical care." *Id.* at 895 (citing *Farmer,* 511 U.S. at 834, 114 S.Ct. 1970). "[A] plaintiff must establish that 'the official knows of and disregards an excessive risk to inmate health or safety,' which is to say 'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Clark–Murphy v. Foreback,* 439 F.3d 280, 286 (6th Cir.2006) (quoting *Farmer,* 511 U.S. at 837, 114 S.Ct. 1970).

Antonini argues that he is entitled to summary judgment because Scott has not shown that he suffered a serious medical need. (Doc. No. 72, Def.'s MSJ 12–13). Antonini argues that the testicular lump was not a condition that could result in further significant injury or result in unnecessary and wanton infliction of pain because the medical records indicate that the testicular lump was a cyst that resolved on its own, did not reoccur, and caused mild, sporadic, and intermittent complaints of pain that could have been treated with pain medications available for purchase in the prison commissary. *Id.* at 13. Antonini also argues that there is no evidence that he disregarded Scott's serious medical need. *Id.*

Scott argues that summary judgment should be denied because he reported to Antonini in February 2006 that he was in great pain, had a testicular lump, and he was concerned that his pain was related to a reoccurrence of his cancer or was due to his cancer treatment. (Doc. No. 77, Pl.'s Resp. 11). Scott also argues that Antonini did nothing to alleviate his concern that his cancer was returning by referring him back to his oncologist or prescribing any pain medication to alleviate his physical pain. *Id.* at 12. Scott further argues that Antonini should have provided pain medication for his lower back pain. *Id.* at 8.

Scott contends that there is also evidence that he alerted Antonini to his symptoms and Antonini disregarded his serious medical need. *Id.* at 14.

Scott has met his burden of showing that a question of material fact exists as to whether he had a sufficiently serious medical need. Although Antonini has presented evidence that downplays Scott's allegations of pain and suffering, Scott has responded with his own affidavit asserting that he informed Antonini of his pain and his concern that the pain indicated that his cancer had returned. (Doc. No. 77, Pl.'s Resp. Ex. P, Scott Aff.). Scott has also provided the grievance he filed with MDOC in which he complained that he told Antonini about his pain and Antonini did not prescribe any pain medication. (Doc. 77, Pl.'s Resp. Ex. L, Prisoner Grievance). Lastly, Scott has provided evidence that he has been prescribed pain medication, by other MDOC physicians, since October 2007 for his lower back pain. (Doc. No. 77, Pl.'s Resp. Exs. J, K, Medical Records). Scott has presented evidence from which a trier of fact could conclude that his medical need was sufficiently serious. For this reason, the court recommends that Antonini's motion for summary judgment be denied.

A factual question also exists as to whether Antonini disregarded Scott's medical needs. In order to prevail on the subjective component of his Eighth Amendment claim, Scott must show that Antonini knew of and disregarded an excessive risk to Scott's health or safety. *See Clark–Murphy,* 439 F.3d at 286. Scott has provided evidence that he reported his pain symptoms, both back and leg pain and pain from the testicular lump, to Antonini and his concern that his testicular lump was related to his previous cancer diagnosis but Antonini did not take appropriate action. Given Scott's post-cancer status and his numerous complaints of ser-

ious pain, the court finds that a reasonable jury could conclude that Antonini disregarded an excessive risk to Scott's health. For this reason, Antonini's motion for summary judgment should be denied.

Antonini's last argument is that summary judgment should be entered on Scott's delayed treatment claim, to the extent that Scott alleges one, because there is no evidence that the alleged delay resulted in further injury and/or worsening of Scott's testicular lump condition. (Doc. No. 72, Def.'s MSJ 18).

Scott responds that a constitutional violation may be premised on the delay alone when prison officials are aware of a prisoner's serious need for medical treatment and delay that medical treatment for non-medical reasons, and that there is ample evidence Antonini delayed his treatment after being apprised of his symptoms. (Doc. No. 77, Pl.'s Resp. 18).

When a plaintiff's Eighth Amendment claim is based on an alleged delay in treatment, the plaintiff "must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." *Napier v. Madison County,* 238 F.3d 739, 742 (6th Cir.2001) (quotation marks and citation omitted). The Sixth Circuit later clarified in *Blackmore:*

> Napier does not apply to medical care claims where facts show an obvious need for medical care that laymen would readily discern as requiring prompt medical attention by competent health care providers. *Napier* applies where the plaintiff's "deliberate indifference" claim is based on the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious. In such circumstances, medical proof is necessary to assess whether the delay caused a serious medical injury.

390 F.3d at 898 (citing *Napier,* 238 F.3d at 742).

To the extent that Scott has pled a claim for delay of medical treatment, this court finds that summary judgment is not warranted at this time. First, Scott has presented medical evidence that he was prescribed pain medications after Antonini was replaced by a different physician. At the very least, the subsequent prescriptions give credence to Scott's allegations that he was in great pain and his condition necessitated pain medications that were not available in the prison commissary. A fact-finder will have to determine what, if any, detrimental effect to Scott's condition was suffered by the alleged delay in treatment. Second, this case may also fall into the *Blackmore* category of "obvious need for medical care," but that is up to the factfinder to determine. Accordingly, the court recommends that the summary judgment motion be denied.

## V. Conclusion

For the reasons discussed on the record and delineated above, the court recommends that Antonini's motion for summary judgment be **DENIED**.

The parties may file objections to the Report and Recommendation portion of this opinion within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *United States v. Walters,* 638 F.2d 947, 949–50 (6th Cir.1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir.1987).

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.