NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a1044n.06

No. 13-1102

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| RELIANCE MEDIAWORKS (USA) INC., a New Jersey Corporation, aka Adlabs Films USA, Inc., | ) ) ) | **FILED**<br>Dec 20, 2013<br>DEBORAH S. HUNT, Clerk |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | |
| GIARMARCO, MULLINS & HORTON, P.C., a Michigan Professional Corporation; DENNIS M. RAUSS, a Michigan Resident; SCOTT J. PUGLIESE, a Michigan Resident, | ) ) ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| Defendants-Appellees. | ) | |

BEFORE: ROGERS, STRANCH, and DONALD, Circuit Judges.

ROGERS, Circuit Judge. A cinema operator known as Adlabs Films brought a malpractice and breach of fiduciary duty suit against the Giarmarco law firm and two of its attorneys. Giarmarco defended Adlabs in a suit brought by a landlord, Newburgh, for breach of a commercial real estate lease through Adlabs' repudiation of the contract. Adlabs lost the suit in July 2010, and the instant malpractice litigation ensued. The district court granted summary judgment in favor of Giarmarco because Adlabs could not prove that the Giarmarco attorneys' alleged litigation mistakes actually caused Adlabs to lose the suit against Newburgh, because Adlabs would have lost the suit in any event. The district court properly determined that Adlabs failed to establish a genuine issue of material fact as to (1) its claim that the Giarmarco attorneys did not offer evidence of Newburgh's

failure to use "commercially reasonable" efforts to secure an early termination of its lease with the prior lessor, American Multi-Cinema, Inc., or (2) Adlabs' claim that the Giarmarco attorneys failed to argue that Newburgh did not mitigate its damages by seeking other tenants to fill the cinema space. Summary judgment was therefore proper. Moreover, the district court properly exercised its discretion in denying Adlabs' motion to reconsider the ruling in light of new evidence.

In March 2008, Adlabs signed a lease with Newburgh/Six Mile Limited Partnership II ("Newburgh") to operate a cinema at Newburgh's complex in Livonia, Michigan. At the time, the complex was occupied by American Multi-Cinema, Inc. ("AMC"). The Adlabs-Newburgh lease provided that Newburgh would "use commercially reasonable efforts" to remove AMC from the premises prior to the October 2009 expiration of AMC's lease, so that Newburgh could deliver the space to Adlabs on or before January 1, 2009. Per the agreement, Adlabs would receive a 50% discount per month on rent for each month in 2009 that AMC remained at the complex. The lease contained a merger clause providing that "all prior agreements between the parties, whether written or oral, are merged herein and shall be of no force and effect." In February 2009, Adlabs sent a letter to Newburgh, and, without citing a clause of the lease, purported to invoke a "right not to move forward with the transaction." In a second letter, Adlabs' attorney explained that "[Adlabs'] financial position has changed and that makes the proposed lease not economically viable. . . . Since the proposed lease is for a future term, [Adlabs] does not believe it has any obligation to perform." On February 19, 2009, AMC agreed to leave the complex by March 31, 2009, and Newburgh sent a letter to Adlabs' counsel with reasons why Adlabs was legally obligated to follow through with

its lease agreement. When Adlabs refused, Newburgh cancelled AMC's early departure and sued

Adlabs for breach of contract, while Newburgh searched for a new tenant to fill the theater complex.

On July 16, 2009, Newburgh entered into a "management agreement" with Insight Management

Consultants, LLC to operate the theater after AMC's departure.

Adlabs hired attorneys Dennis M. Rauss and Scott Pugliese of Giarmarco, Mullins &

Horton, P.C. (collectively "GMH") to defend it from Newburgh's breach of contract claims. In July

2010, the district court granted Newburgh's motion for summary judgment, and ordered Adlabs to

pay Newburgh $4,870,243.71 for breaching the lease. The district court denied Adlabs' motion to

reconsider, and this court affirmed.

In October 2011, Adlabs filed suit against GMH alleging malpractice and breach of fiduciary

duty for "multiple miscues by [GMH]" that Adlabs claims the district court recognized in the

Newburgh-Adlabs suit. The lower court deemed the list of mistakes to be "bloated, redundant, and

unhelpful" because it "obscures which, if any, of the 'miscues' possibly changed the outcome of the

case," a requirement for prevailing on a legal malpractice claim. After a "[c]lose study of the

record," the court determined that only four of the alleged mistakes could have affected the outcome

of the case:

> 1) GMH's failure to plead fraud with the requisite particularity on the issue of
> whether Newburgh told Adlabs it could terminate the lease if it was not in the theater
> by January 1, 2009;
>
> 2) GMH's failure to discover evidence sufficient to support a claim that Newburgh
> did not use commercially reasonable efforts to obtain AMC's early termination;

3) GMH's failure to adequately argue that Newburgh did not reasonably mitigate its damages, and that Adlabs was entitled to specific performance; and

4) GMH's failure to provide evidence for the proper calculation of damages.

Nevertheless, the district court granted GMH's motion for summary judgment on the malpractice claims, because Adlabs failed to "establish[] 'a case within a case,' that is, a strong case against Newburgh." In other words, Adlabs' dearth of evidence meant that Adlabs failed to prove that any of GMH's alleged mistakes actually caused Adlabs to lose the Adlabs-Newburgh suit.

As to the breach of fiduciary duty claim, the district court accepted Adlabs' request that GMH's motion be treated "as a motion for partial summary judgment because it addresses only some of the liability theories." The court requested that both sides "address whether Adlabs' inability to prove the 'case within a case' dooms the claim for breach of fiduciary duty." GMH submitted a supplemental brief on the issue; Adlabs submitted both a supplemental brief and a motion for reconsideration of the malpractice claim. The district court denied the motion for reconsideration "[b]ecause Adlabs failed to comply with Federal Rule of Civil Procedure 56(d)," which requires a party to "give 'specified reasons' why 'it cannot present facts essential to justify its opposition'" to summary judgment. The district court granted summary judgment in favor of GMH for the breach of fiduciary duty claim because "Adlabs never addresse[d] the issue raised by the November 27 order, specifically whether Adlabs' fiduciary duty and malpractice claims are governed by different standards of causation and damages."

Adlabs timely appeals the district court's grant of summary judgment as to its breach of fiduciary duty claim on the grounds that it is independent of the malpractice claim. Adlabs appeals

summary judgment on its malpractice claims on two issues: 1) GMH's failure to present evidence establishing that Newburgh did not use "commercially reasonable" efforts to seek AMC's early lease termination; and 2) GMH's failure to plead affirmatively that Newburgh failed to mitigate damages by seeking out tenants, including those who would use the premises for purposes other than a movie theater. Adlabs also argues that the court improperly failed to reconsider its ruling in light of "new" evidence Adlabs developed after summary judgment.

**A.**

Adlabs' breach of fiduciary duty claim was a replica of its malpractice claim, and the district court properly granted summary judgment on the fiduciary duty claim. Before the end of the discovery period allotted by the court, GMH moved for summary judgment on Adlabs' claim that it had committed malpractice in the underlying Adlabs-Newburgh suit. The district court granted the motion, but, at Adlabs' request, invited the parties to submit a supplemental brief addressing "whether Adlabs' inability to prove the 'case within a case' [on the malpractice claim] dooms the claim for breach of fiduciary duty"; in other words, whether the two causes of action were different enough that it was still possible for Adlabs to prove the causation element of its breach of fiduciary duty claim, even though it failed to do so for its malpractice claim. The court ruled against Adlabs because "Adlabs never addresse[d] the issue raised by the November 27 order, specifically whether Adlabs' fiduciary duty and malpractice claims are governed by different standards of causation and damages." On appeal, Adlabs insists that the district court erred because "[i]t is proper to bring both

malpractice and breach of fiduciary duty claims based upon the same general sets of facts, where those facts give rise to both of the claims."

Adlabs confuses the issues. Whether or not it is proper for a plaintiff to bring both a malpractice and a breach of fiduciary duty claim is not the same question as whether those claims must stand or fall together, if (as in this case) the same set of facts is being used to prove the element of causation that is necessary for both. The district court noted that "[a]t no point during this action has Adlabs treated the breach of fiduciary duty claim as something other than a replica of the malpractice claim," and indeed, Adlabs declined to explain to the court whether and how the two differ. As GMH points out, like the plaintiffs in *Aldred v. O'Hara-Bruce*, 458 N.W.2d 671, 672-73 (Mich. Ct. App. 1990), Adlabs could not articulate this difference, because there isn't one. In *Aldred*, the Michigan Court of Appeals reasoned as follows in rejecting the applicability in a legal malpractice litigation of the longer statute of limitations for a contract action:

> [T]he allegations in plaintiffs' complaint state that defendant failed to act "diligently and professionally" in connection with plaintiffs' son's case and that the same constituted "negligence, breach of duty, lack of professional responsibility as well as breach of contractual obligations." Plaintiffs' complaint as a whole evidences that damages flowed not from defendant's failure to represent their son, but from her failure to do so adequately. We find that this claim is grounded in malpractice only.

*Id*. at 673. Therefore, if the district court found that Adlabs had failed to show that a genuine issue of material fact existed as to its malpractice claim, it necessarily failed to prove its breach of fiduciary duty claim.

**B.**

The district court did not abuse its discretion in granting GMH's motion for summary judgment as to Adlabs' malpractice claim, because Adlabs had presented no genuine issue of material fact on dispositive issues, nor established that it could if given more time to complete discovery. Three months after the start of discovery, GMH filed a motion for summary judgment on Adlabs' malpractice claim. To survive the motion for summary judgment, Adlabs needed to demonstrate a genuine issue of material fact as to each element of its claim, or in the alternative, to "show[] by affidavit or declaration that, for specified reasons, it [could] not present facts essential to justify its opposition. Fed. R. Civ. P. 56(d). For the malpractice claim at issue here, one of those elements is causation, which requires a plaintiff to "introduce evidence permitting the jury to conclude that the act or omission was a cause [of an injury]." *Craig v. Oakwood Hosp.*, 684 N.W.2d 296, 309 (Mich. 2004) (emphasis deleted). Adlabs did not demonstrate that GMH's alleged malpractice caused injury.

**1. Adlabs' First Claim**

Summary judgment was proper as to Adlabs' claim that GMH committed malpractice by failing to present evidence showing Newburgh did not use "commercially reasonable" efforts to seek AMC's early termination. Neither GMH nor Adlabs directly addressed this particular issue during briefing on the motion for summary judgment. GMH moved for summary judgment as to Adlabs' malpractice claim generally, and Adlabs did not address this issue in its response pleading (although it did contend in its initial complaint that this failure supported its malpractice claim). On appeal,

Adlabs says of its "commercially reasonable efforts" claim, "The motion for summary judgment and Adlabs' responsive brief did not, and could not, consider discovery developed from the expert reports and the depositions of the parties, as they were not completed until *after* the briefing schedule elapsed on the Giarmarco Defendants' motion."[1] Nevertheless, the district court addressed this claim in its opinion and order, noting that Adlabs does not "explain[] what Newburgh should have done differently when dealing with AMC," and "[t]he record contains no evidence by which a jury could reasonably conclude that Newburgh acted unreasonably." In addition, Adlabs argues that if GMH had proven that Newburgh did not use commercially reasonable efforts to deliver the premises before January 1, 2009, Newburgh would have been in anticipatory breach of the contract, and, therefore, Adlabs would not have been found to have been in breach when it refused to follow through with the lease. However, this argument is meritless because the contract clearly provides a remedy for failure to deliver the premises by January, and it is not cancellation of the contract. Instead, Newburgh would give Adlabs a discount on the rent when it finally did come into possession of the property.

Adlabs made no effort to defend its claim in its brief opposing GMH's summary judgment motion, and therefore, the court did not err in granting summary judgment on this issue.

---

[1]This argument about later-developed evidence is best analyzed in the context of the court's denial of Adlabs' motion to reconsider, and not as part of an assessment of the court's initial decision to grant summary judgment.

## 2. Adlabs' Second Claim

Because Adlabs established no genuine issue of material fact, nor the possibility that it could do so, the district court properly granted summary judgment as to Adlabs' claim that GMH committed malpractice by failing to plead affirmatively that Newburgh did not mitigate its damages because it did not diligently seek tenants after the Adlabs-Newburgh lease collapsed.

In its motion opposing summary judgment, Adlabs stated that "[GMH's] inaction caused forfeiture of a 'failure to mitigate' defense based on whether [Newburgh's] efforts were 'reasonable.' . . . Discovery will reveal whether the alternative tenant's condition warranted withdrawal from that available mitigation, and whether Newburgh acted 'reasonably' in foregoing an alternative tenant." Adlabs argued that the "reasonableness" of Newburgh's mitigation effort was a question for the jury, and that "[GMH] conducted no independent discovery about the financial condition of the replacement tenants to assess whether the purported concerns of Newburgh were well founded." This argument assumes that GMH would have discovered evidence proving that Newburgh's concerns were not well-founded, and that GMH's negligence therefore injured Adlabs, because the case could have gone to the jury on this issue. However, Adlabs presented no evidence to the court to create a genuine issue of material fact as to the tenants' finances, nor did it point to specific facts essential to justify its opposition. Adlabs' opposition brief did not even mention the names of any of Newburgh's alleged "replacement tenants."

In granting GMH's motion for summary judgment, the district court noted that "Adlabs never establishe[d] the plausibility, or even the rationality" of its claim that "Newburgh engaged in a

"'ploy' by which it 'was able to saddle Adlabs with a liability exceeding $5,000,000 . . . while retaining the ability to later lease out the premises, perhaps for a higher rent' than Adlabs was to pay." As to Adlabs' contention "that GMH should have procured specific performance of the lease," in its opinion in the underlying litigation the district court reasoned that "once a lease has been terminated after a default, the defaulting party may not seek specific performance of the contract." *Newburgh/Six Mile L.P. II v. Adlabs Films USA, Inc.*, 724 F. Supp. 2d 740, 752 (E.D. Mich. 2010) (citing *MacGlashan v. Harper*, 1 N.W.2d 30 (Mich. 1941); *Gurunian v. Grossman*, 49 N.W.2d 354 (Mich. 1951)). Adlabs made no attempt to address this argument.

In addition, Adlabs made no specific showing of the evidence it would acquire to establish a genuine issue of material fact as to this issue. On appeal, Adlabs argues that the court below erred "when it granted summary judgment on Adlabs' legal malpractice claim *because of* a failure to include a Rule 56(F) [now Rule 56(d)] affidavit" (emphasis added). Adlabs argues that "[c]ourts . . . have loosened the reins on the Rule 56(f) [now Rule 56(d)] affidavit requirements," allowing parties to preserve on appeal the issue of further discovery "[a]s long as the non-moving party has explained the need for further discovery and has not been dilatory in seeking discovery."[2] Adlabs

---

[2]The Rule 56(d) requirements are relevant not just for assessing the district court's grant of summary judgment (and its subsequent denial of Adlabs' motion to reconsider), but also for determining whether or not Adlabs has preserved the issue for appeal. In *Plott*, this court stated:

> [I]n order to preserve the argument that the grant of summary judgment was too hasty and precluded necessary discovery, the appellant must have complied with the strictures of Federal Rule of Civil Procedure 56(f) [now 56(d)], under which the district court may defer summary judgment, pending discovery, if the non-movant submits affidavits stating that the party cannot for reasons stated present by affidavit

suggests that the district court's asking for greater specificity of why, specifically, more discovery is needed, is like asking "Adlabs . . . to sing a song that had yet to be written." Adlabs cites *Abercrombie & Fitch Stores, Inc. v. American Eagle Outfitters*, 280 F.3d 619 (6th Cir. 2002) to support its argument that an affidavit is not needed because Adlabs explained the need for further discovery in its response brief. We do not base our decision on a rigid requirement that an affidavit is required for a Rule 56(d) motion. Here, the district court found that Adlabs had not complied with the substance or purpose of Rule 56(d). In other words, Adlabs lost because it "offer[ed] only general proclamations that more discovery will reveal evidence of fraud or of a failure to mitigate damages," not because it failed to comply with formalities by presenting its argument in the form of an affidavit.

While it is true that Adlabs' situation poses a conundrum—it must discover the evidence its attorneys failed to discover in order to prove its case—it must do better than, for instance, making

---

facts essential to justify the party's opposition.

\*\*\*

In other words, if the appellant has not filed either a Rule 56(f) affidavit or a motion
that gives the district court a chance to rule on the need for additional discovery, this
court will not normally address whether there was adequate time for discovery.

*Plott v. General Motors Corp., Packard Elec. Div.*, 71 F.3d 1190, 1197 (6th Cir. 1995) (internal
quotation marks omitted). In *Abercrombie*, the Sixth Circuit cautioned courts not to "exalt form
over substance" in mandating the filing of a 56(d) affidavit. *Abercrombie*, 280 F.3d at 628. But at
minimum, the party must comply with the substance of Rule 56(d), which Adlabs arguably did not
do. Therefore, whether this issue is preserved on appeal is not dispositive of the outcome of the
case, because Adlabs loses regardless.

unsupported allegations that Newburgh had a "ploy" whereby it "was able to saddle Adlabs with a liability exceeding $5,000,000 while retaining the ability to later lease out the premises, perhaps for a higher rent than that called for in the Adlabs lease." Adlabs did not have to know precisely what it would discover if given more time, but it did have to articulate more than simply the theory it intended to prove from the beginning. Adlabs argues that GMH suggests "that upon production their [4,000+ pages of documents] in August of 2012, Adlabs should have, by some form of osmosis, absorbed their content immediately. . . ." But this argument cuts equally against Adlabs: it did not need to absorb all the documents, it only needed to use them (or some of them) to substantiate its arguments about the discovery left to be conducted.

The district court therefore properly granted GMH's motion for summary judgment as to Adlabs' malpractice claims.

## C.

The district court did not abuse its discretion in denying Adlabs' motion to reconsider, because even if the "new" evidence introduced might have established a genuine issue of material fact as to Adlabs' second claim against GMH, Adlabs failed to demonstrate how the court had "palpably erred" in granting summary judgment for GMH. *See* E.D. Mich. LR 7.1(h)(3).

The district court denied Adlabs' motion to reconsider because Adlabs failed to identify a "palpable defect" in the court's grant of summary judgment, which, if corrected, would "result in a different disposition of the case." E.D. Mich. LR 7.1(h)(3). In order to show that the court erred by granting summary judgment before the end of discovery, Adlabs needed to address Rule 56(d),

which requires a party not ready to oppose summary judgment to state "specified reasons" why "it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). In other words, because Adlabs did not comply with the demands of Rule 56(d) (with an affidavit or otherwise) when it faced summary judgment, the district court could not have erred in dismissing Adlabs' claim setting forth reasons why more discovery was necessary, and Adlabs could not ask the court to reconsider that claim if it did not established the need to conduct more discovery in the first place. Of course, Adlabs disputes this very issue, arguing that it did comply with Rule 56(d); but Adlabs has not demonstrated that the district court abused its discretion or "palpably erred" in finding that it had not complied, at minimum, with the substantive requirements of the rule. For this reason, we need not reach the merits of Adlabs' claims. However, in the interest of thoroughness and fairness to Adlabs, we will address them.

### 1. Adlabs' First Claim

In its opposition to GMH's motion for summary judgment, Adlabs did not defend its claim that GMH committed malpractice by failing to argue that Newburgh did not use commercially reasonable efforts to terminate its lease with AMC. Therefore, the district court properly declined to reconsider the claim. The district court initially ruled against Adlabs on this issue, but was not obligated to address a claim Adlabs itself failed to brief. Adlabs was therefore not entitled to reconsideration on the same issue it declined to brief, and the district court did not err in refusing to do so. In any event, the new evidence Adlabs presented for reconsideration failed to establish a genuine issue of material fact necessary to have changed the outcome of the case.

Adlabs cited email exchanges between Newburgh and AMC, and between AMC and its employees, regarding the terms of the proposed lease termination agreement. These emails that Adlabs argued should have been presented to the judge in the underlying lease case support a finding that Newburgh was even more diligent than it appeared from the trial record. On appeal, Adlabs mischaracterizes the record, contending that from July 2008 through February 2009, "there is no evidence, documentary or otherwise, of negotiations for early termination between AMC and Newburgh." However, Mark Schostak of Newburgh testified in the Adlabs-Newburgh lease trial that he took over negotiations with AMC in November 2008. Schostak Dep., Oct. 30, 2009, Case No. 2:09-CV-11067.

In addition, Adlabs emphasized that in an affidavit executed after the motion for summary judgment, Chuck Stilley, president of AMC Realty, Inc., indicated that "he was not aware of any reason which would have prevented AMC, prior to January 1, 2009, from entering into the same early termination agreement proposed in March, 2009." As GMH points out, Mr. Stilley was not a decision-maker in the Adlabs-Newburgh lease; instead he "circulate[d] a deal sheet" that he "believed would be on [Newburgh's] terms," and "pushed to the decision makers" the question of early termination of the AMC lease. In light of Mr. Stilley's limited role on the Adlabs-Newburgh lease, GMH argues that "Mr. Stilley's lack of knowledge of any impediment to the agreement before January 1, 2009 is meaningless; he was not in a position to have personal knowledge of what the actual decision makers at AMC would have done." This affidavit does not "answer[] the burning proximate cause question" in the case, as Adlabs contends that it does.

The evidence Adlabs presented on this issue in its motion to reconsider is not compelling enough to create a genuine issue of material fact as to whether GMH was negligent, and more specifically, whether this negligence caused Adlabs an injury it would not otherwise have suffered. In addition, there is no evidence that the district court abused its discretion in refusing to reconsider an issue Adlabs failed to brief in its motion opposing summary judgment.

### 2. Adlabs' Second Claim

Adlabs was not entitled to reconsideration of its claim that GMH committed malpractice because GMH neglected to argue that Newburgh failed to mitigate damages by seeking other tenants, who perhaps would have paid more for a lease than what Newburgh's ultimate agreement with Insight yielded. Adlabs did not comply with the demands of Rule 56(d) in its initial opposition to summary judgment, and therefore, the court was not obligated to reconsider the order.

In its motion to reconsider, Adlabs emphasized a July 2009 letter Lars Andersen (Director of Leasing for the Schostak Brothers & Company) received from Tim Reed of Beach Cinemas, which proposed to lease the cinema space from Newburgh for five years at $10/square foot. Mr. Reed stated that "the business terms set forth in this letter are firm," but noted that, "this proposal is absolutely contingent upon approval by [Beach Cinemas'] board[] of directors." In its reply brief on appeal, GMH attempts to downplay the significance of the letter, noting that it was "not executed nor is it even on letterhead . . . . The document appears, at most, to be a red-line draft. Adlabs presented no evidence that "Beach Cinema" or anyone would have in fact paid Newburgh $10 per square foot for the theater space for five years." A letter of intent (redlined or otherwise) that

Newburgh never pursued could arguably be enough to create a genuine issue of material fact as to whether Newburgh's mitigation efforts were "reasonable" (which, if properly pled, could have avoided summary judgment against Adlabs in the Adlabs-Newburgh suit). As Adlabs points out, "If Defendants would have provided this information to Judge Murphy, he could not have concluded there was an unlikelihood of 'any undiscovered evidence that would demonstrate that Newburgh failed to mitigate its damages.'"

We need not decide whether the district court would have concluded that Adlabs had established a genuine issue of material fact as to its mitigation-malpractice claim if the court had agreed to reconsider its ruling against Adlabs in light of this evidence. The court's decision to deny Adlabs' motion to reconsider is reviewed for abuse of discretion. *Plott*, 71 F.3d at 1196. Because the court concluded that Adlabs had not complied with the demands of Rule 56(d) (with an affidavit or otherwise) when it faced summary judgment the first time, the district court did not abuse its discretion in denying Adlabs' motion to reconsider, finding that Adlabs had identified no "palpable error" in the earlier decision to compel an amendment.

The judgment of the district court is AFFIRMED.