NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

File Name: 15a0234n.06

Case No. 14-1534

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**

Mar 30, 2015

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| ROBERT BAKER, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| VERNON STEVENSON, et al., | ) | MICHIGAN |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | |
| | ) | |

BEFORE: SILER, GRIFFIN, and WHITE, Circuit Judges.

**SILER**, Circuit Judge. Plaintiff Robert Baker appeals the district court's grant of summary judgment on his Eighth Amendment and 42 U.S.C. § 1983 claims in favor of Defendants Jeffrey Stieve, John Steele, Vernon Stevenson, and Corizon Health, Inc. For the reasons stated below, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Baker, an inmate confined by the Michigan Department of Corrections ("MDOC"), asserts that he has suffered from extreme back pain for most of his adult life. In 2004, he had a surgical decompression procedure performed on his back after a history of problems and a herniated disk. He developed an infection after the surgery and was prescribed methadone and Dilaudid for pain.

In March 2006, Baker was admitted to the Regional Medical Center in Bay City, Michigan with a diagnosis of polysubstance overdose, but he denied taking an overdose of methadone and Dilaudid.

In June 2006, Baker was held at the Bay County Jail on a misdemeanor domestic violence charge. He smuggled methadone pills into the jail. The methadone was subsequently stolen and ingested by two inmates who experienced a fatal overdose. As a result, Baker was convicted of manslaughter and other related charges.

Baker was admitted to the MDOC in 2007. In late 2007 and early 2008, he received prescriptions for methadone and Neurontin from Dr. William Dunker. Later, MDOC's Pain Management Committee ("PMC") approved Tylenol, anti-inflammatory drugs, Neurontin, methadone, and Nortriptyline for Baker's condition. In November 2008, the PMC decided to continue treatment with methadone, Neurontin, and Nortriptyline while adding a prescription for Flexeril.

In July 2009, the PMC issued a new recommendation: Pamelor, Neurontin, "methadone, 30 mg taper and stop over 3 mos (oct. 15)," vitamin D3, "stop baclofen [and] offer physical therapy." In September 2009, Baker was seen by Dr. Vernon Stevenson, who noted that Baker "has had [the gamut] of meds for his back and we are now managing with methadone and neurontin and pamelor." Subsequently, Dr. Stevenson informed Baker that he would wean Pamelor and adjust the Cymbalta for pain management. Thereafter, Dr. Stevenson sought approval for the Cymbalta due to wanting "to avoid all opiates and ultram and neurontin/pamelor and elavil—tried and gave lots of dry mouth and constipation."

In December 2009, Dr. Stevenson entered a progress note stating: "cymbalta adjusted to 60 mg daily. Pain management committee wants methadone weaned off."

In December 2009, Dr. Jeffrey Stieve, the Chief Medical Officer for the MDOC and the chairman of the PMC, entered an administrative progress note stating: "Chart reviewed and I agree with plan to taper and stop methadone for [degenerative disk disease] of back. Agree with consult of 6-29-09 by PMC to treat without methadone." On December 18, 2009, Baker was seen in the Duane Waters Hospital's ("DWH") Emergency Room. The report from this visit states: "Notably, the patient reports that his methadone dosage was significantly decreased and this has lead [sic] to an increase in a number of muscle spasms and pain in his low back." An MRI of the spine revealed "[m]arked chronic changes mildly worse than prior study."

In January 2010, Dr. Stevenson saw Baker and had a discussion with him regarding his pain medications, stating Baker "denies wanting to go back on the methadone only to be weaned off them again." Baker claimed that methadone was the most effective remedy for his chronic pain and claimed to have been using the drug for over ten years without any issues. A nurse prepared a release of responsibility form because Baker refused to take a reduced dosage of methadone. Baker refused methadone at the med line that day, commenting that "if they are only to give me one why bother."

In June 2010, Baker told Dr. Stevenson that he wanted to be returned to Baclofen treatment. Dr. Stevenson prescribed Tegretol, but it caused Baker to experience headaches and Dr. Stevenson discontinued the medication. Dr. Stevenson continued prescribing Pamelor and Neurontin for pain and advised Baker to exercise.

In July 2010, Baker received a mental health evaluation. The evaluator noted a history of substance abuse dating back to Baker's teenage binge drinking and marijuana use. Baker admitted to two different periods of treatment for substance abuse. The clinical history also noted Baker's relevant criminal history: three convictions for impaired driving, a conviction for

marijuana possession, a conviction for cocaine possession, and a conviction for breaking into a pharmacy in order to steal opiates.

Dr. Stieve performed a chart review in August 2010. He indicated that he thought the Neurontin should be stopped due to Baker's substance abuse history and the apparent lack of improvement. Dr. Stieve recommended "[anti-inflammatory drugs], tylenol, and tegretol to 200 mg bid, with self massage, heat and mild ambulation and stretching" to manage Baker's pain.

Baker was seen by Dr. Richard Miles in September 2010, who noted "Low Back Pain with objective findings inconsistent with subjective complaints." In a progress note made on the same day Dr. Miles recorded that he observed Baker "walking quickly" across the prison yard and "turn[ing] in different directions while walking without difficulty." Baker was also observed walking at a slower pace while in close proximity to the healthcare area before resuming a more normal speed further away from observation. Another follow-up note from a Physician's Assistant (PA) recorded that on September 28 Baker was seen walking "briskly with an upright posture" to the chow hall with "no gait instability or protective posturing." An October 2010 medical report noted that:

> Received report from MSP 2 days ago that [patient's] urine drug screen was positive for morphine.
> * * *
> Also noted– This clinician has received 2 reports from other OPT staff on separate occasions that [patient] was observed walking, talking with no pain, in good mood and good posture, joking, using the restroom and moving about without any limitations. On both occasions he was unaware that he was being observed. When he realized it, he became suddenly distressed, posture changed, hunched down, moaned [and] groaned in pain and presented as miserable.

In December 2010, Dr. Stieve recommended another PMC examination by the lead physician at the facility where Baker was confined. Dr. Nancy McGuire conducted an examination later that month. A neurology examination was requested but deferred based on the

lack of observed motor deficits. In May 2011, Baker was sent to DWH's Emergency Room for behaving "bizarrely, very similarly to in the past when hes [sic] had two separate tickets for narcotics violations." The PA on duty reported possible illegal drug use and intoxication and stated he could not rule out malingering and drug-seeking behavior. Baker complained of constant pain to a nurse in November 2011. This nurse also recorded suspicions of possible drug-seeking behavior and exaggeration of subjective pain. In February 2012, two pills of unprescribed oxycodone were recovered from Baker's cell.

Upon transfer to a different correctional facility, Baker was further evaluated by other prison medical staff. The evaluation noted Baker's "[s]evere subjective disability" but also noted, "Reported video evidence of patient able to play pool in unit area at last facility" and the evaluator's personal observations of Baker's "walk[ing] across the yard without stiffness of gait, change in stride, full stride." A PMC review in May 2012 recommended an end to the Tylenol and anti-inflammatory drugs while encouraging self-massage, range of motion and stretching exercises, weight loss, and walking twenty to forty minutes twice a day. The PMC review agreed with Baker's medical service provider not to prescribe Pamelor.

## PROCEDURAL BACKGROUND

Baker's complaint alleged denials of "access to adequate and competent medical treatment, care, and medications" and characterized those denials as "deprivation[s] under color of state law of rights, privileges, and immunities secured to Plaintiff by provisions of the Eighth Amendment."[1] The named defendants were Dr. Stevenson, Dr. Stieve, Dr. Steele, Prison Health

---

[1] The Complaint never explicitly cites 42 U.S.C. § 1983, but the language quoted here clearly tracks with the language of that statute.

Services, Inc. ("PHS"),[2] Corizon Health, Inc. ("Corizon"), Dr. Brian McCarroll, and Dr. Sylvia McQueen. All of the Defendants filed motions for summary judgment. McCarroll was subsequently dismissed from the action by agreement of the parties.

While the remaining motions for summary judgment were pending, a magistrate judge issued a ruling on three discovery motions filed by Baker after the cutoff date for discovery. The magistrate ruled, inter alia, that "Plaintiff may depose defendants Steele, Stevenson and Stieve no later than May 7, 2014."

Less than two weeks after the magistrate's ruling, the district court granted the remaining motions for summary judgment and entered judgment in favor of all defendants. Baker's motion for reconsideration was denied. Baker subsequently filed a notice of appeal, but only as to defendants Stieve, Steele, Stevenson, and Corizon.

## APPLICABLE LEGAL STANDARDS

We review a district court's grant of summary judgment de novo, construing the evidence and drawing all reasonable inferences in favor of the nonmoving party. *Hirsch v. CSX Transp., Inc.*, 656 F.3d 359, 362 (6th Cir. 2011).

"[A] prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). This standard incorporates both an objective and a subjective element. "First, the deprivation alleged must be, objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Id*. at 834 (internal quotation marks and citations omitted). For the subjective

---

[2] In April 2009, PHS took over the medical contract with MDOC to provide certain healthcare services to inmates. PHS was the predecessor in name to Corizon Health, Inc.

element, "the official [must] know[ ] of and disregard[ ] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837. Crucially, "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id*. at 844.

"[W]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in state tort law." *Graham ex rel. Estate of Graham v. Cnty. of Washtenaw*, 358 F.3d 377, 385 (6th Cir. 2004) (quoting *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976)). "Of course, in some cases the medical attention rendered may be so woefully inadequate as to amount to no treatment at all," *Westlake*, 537 F.2d at 860 n.5, in which case the official's conduct would rise to the level of a constitutional violation. *Graham*, 358 F.3d at 384.

## DISCUSSION

### I. The Eighth Amendment as Applied to Incarcerated Substance Abusers

Baker first argues that the denial of opiate medications on the basis of a medical opinion that a prisoner is a substance abuser amounts to intentional infliction of pain in violation of the Eighth Amendment.[3] But the Eighth Amendment does not impose a constitutional obligation upon prison officials to enable a prisoner's substance abuse or addiction problem. Efforts to wean a prisoner off opiate or narcotic pain medication to which he has become addicted are not

---

[3] Although the medical documents in the record do not clearly indicate the PMC's reasoning at the time of the initial withdrawal of methadone, Baker has endorsed the statement of Dr. Stieve, the PMC's main decision maker, that "he discontinued the medications, Methadone and Baclofen, because of his opinion that Plaintiff is a substance abuser."

an unconstitutional form of punishment but a medical judgment that the long-term harms of addiction and abuse outweigh the short-term benefits of reduced subjective pain.

In this regard, the treatment of chronically suffering prisoners with narcotic medication does not fit neatly into our general Eighth Amendment test. Instead of weighing a single alleged risk of harm, against which the adequacy of official action can be judged, a reviewing court is asked to pass judgment on the attempts by prison medical staff to navigate between the Scylla of debilitating pain and the Charybdis of addiction to prescription drugs.

There are occasions when an official has a subjective, good-faith belief that a particular response to a prisoner's substantial risk of serious harm might either 1) fail to mitigate the risk or 2) create or enable a different substantial risk of serious harm to the prisoner. In those situations, an official's decision not to authorize that particular response cannot be considered an act of deliberate indifference, and we are mindful of the possibility that a reasonable response to a risk may not be able to avert the ultimate harm. *See Farmer*, 511 U.S. at 844. These scenarios most commonly occur within the context of medical treatment, which is why both the Supreme Court and this court have rejected Eighth Amendment claims that second-guess the medical judgments of medical personnel. *See Estelle v. Gamble*, 429 U.S. 97, 107 (1976); *Graham*, 358 F.3d at 385.

In a series of recent unpublished decisions, this court has rejected a number of claims similar to those in Baker's complaint. In *Brock v. Crall*, 8 F. App'x 439, 441 (6th Cir. 2001), we ruled that an Eighth Amendment complaint failed to state a proper claim for relief where the primary allegation was that two doctors failed to diagnose and treat a lower back ailment. In *Moses v. Coble*, 23 F. App'x 391, 392 (6th Cir. 2001), where a prisoner alleged that he suffered pain from his serious back problems due to defendants' refusal to provide anything beyond over-the-counter pain medication, we affirmed the dismissal of the complaint as "clearly frivolous."

In *Thomas v. Webb*, 39 F. App'x 255 (6th Cir. 2002), we affirmed the dismissal of an action filed by a Tennessee prisoner who suffered from kidney stones and a stress disorder. The plaintiff argued that he should have received strong medications for both conditions. We described the decision to remove one of those medications as follows:

> Regarding his stress disorder, the records show that Thomas was taking Xanax when he was first incarcerated. The psychiatrist initially planned to reduce his Xanax prescription and eventually replace it with Ativan, but, after learning of a history of substance abuse by Thomas, she decided not to prescribe Ativan, and instead encouraged Thomas to deal with his stress through counseling, including grief counseling and crisis management counseling.

*Id*. at 256. We ruled that Thomas "failed to show that in treating him, defendants were deliberately indifferent to an excessive risk to his health." *Id*.

Finally, in *French v. Daviess Cnty., Ky.*, 376 F. App'x 519 (6th Cir. 2010), we addressed a claim by a prisoner that the administration of a Valium detoxification protocol to wean him off Xanax constituted deliberate indifference to his serious medical needs. We noted that, while "French may have had a serious medical need for Xanax . . . . Xanax is a highly addictive medication . . . ." *Id*. at 522. We ruled that "[w]here the question is one of administering a highly addictive drug on a continuing basis in the prison setting, the prison staff should have some discretion; and we do not think that the Valium substitute meets the standard of [subjective indifference]." *Id*.

In light of these decisions, Baker's allegations are untenable. As in *French* and *Thomas*, medical personnel had documented concerns about Baker's possible substance abuse and the impropriety of continued treatment with his preferred medication.[4] These concerns stemmed

---

[4] Baker argues that he should be able to present evidence to the jury that he was not a substance abuser. The relevant question for summary judgment purposes, however, is not the truth or falsity of Baker's substance abuse, but whether any reasonable jury could find that the MDOC medical staff did not have a subjective

from Baker's past history of substance abuse and convictions relating to controlled substances, as well as first-hand observations of Baker's acting in ways inconsistent with his claims of constant and debilitating pain. Notably, even at this stage in the litigation Baker's arguments are based only upon his "personal experience" and "information and belief" that methadone is the only adequate means of treatment. By contrast, the Defendants have proffered an expert medical report that describes Baker's past use of narcotic medication as an "opioid treatment failure," suggests that the opioid medications may actually increase Baker's internal perception of pain through "opioid induced hyperalgesia," and states that Baker has an opiate addiction.

Under these circumstances, it would be impossible for a reasonable juror to conclude that any of the individual defendants knowingly chose a course of treatment that was so "woefully inadequate" as to be subjectively indifferent to the serious medical needs of Baker. The facts on hand indicate that the medical staff sought to gradually wean Baker off methadone rather than forcing him to go "cold turkey." *Cf. French*, 376 F. App'x at 522 (contrasting a gradual detoxification protocol with an abrupt removal of an addictive medication that might "have serious consequences"). And the record is clear that the challenged plan of medical treatment consistently augmented the less powerful pain medications with suggestions for lifestyle changes and daily regimens that might mitigate (although by no means eliminate) Baker's pain.

With regards to defendant Corizon, Baker has failed to maintain a proper Eighth Amendment claim. As a private entity contracted to perform the traditional state function of prison medical care, Corizon may be sued for constitutional violations. *See Johnson v. Karnes*, 398 F.3d 868, 877 (6th Cir. 2005). Corizon cannot be held liable on a theory of *respondeat superior*, but it can be held liable on the basis of a corporate policy, practice, or custom that

---

good-faith belief that Baker was a substance abuser. There is no evidence to suggest that the suspicions of substance abuse were pretextual or insincere, and therefore there is no evidence to undermine a ruling that the medical staff were not subjectively indifferent to Baker's medical needs.

causes the plaintiff's injury. *Id*. Baker concedes that Corizon does not have a general policy to deny inmates access to methadone, and that "the direct cause [of plaintiff's alleged injury] was Defendant Stieve and his Pain Management Committee." But Baker then advances the inventive argument that Corizon's policy of having its member of the PMC abstain from decisions and participate only in an advisory capacity is a "contributing cause" of Baker's injury.

In his opposition to Corizon's motion for summary judgment, Baker appears to have conceded that Dr. Stieve, as chairman of the PMC and the MDOC medical director, "made the decisions regarding patient care." Baker attempts to argue that Corizon's policy of only participating in an advisory role amounts to "an abdication of responsibility" and grounds for liability. But Baker makes no attempt to explain how a Corizon employee could overrule Dr. Stieve or otherwise influence him beyond providing advisory opinions. Baker essentially asks this court to impose an obligation upon a private contractor to restrain the actions of appointed government officials——a completely implausible standard.

Because none of the individual defendants violated Baker's Eighth Amendment rights, the "policy, practice, and custom" claim against Corizon must also fail. *See Watkins v. City of Battle Creek*, 273 F.3d 682, 687 (2001).

## II.    The District Court's Refusal to Defer a Ruling on Summary Judgment

In his initial brief, Baker provided a short argument that it was "error to rule on motions for summary judgment before discovery is complete." In his reply brief, Baker has acknowledged that, "Since I have no law to support me on this issue, I assume that this Court will consider this issue abandoned." This assumption is well-founded.

Baker filed his additional motions to compel discovery after the end of the designated discovery period. On the same day that Baker filed his discovery motions, the defendants filed their motions for summary judgment.

Fed. R. Civ. P. 56(d) permits a non-moving party to make a showing "by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition" to a motion for summary judgment. If a non-moving party makes that showing, the court may "(1) *defer considering the motion* or deny it; (2) allow time to obtain affidavits or declaration *or to take discovery*; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d) (emphases added). This rule clearly encompasses the situation Baker faced when he had pending motions to compel discovery and pending motions seeking summary judgment for the defendants. Yet he neither filed a Rule 56(d) motion nor made any analogous arguments in his opposition to summary judgment. Baker did not raise the issue of the magistrate judge's discovery rulings until he filed his motion for reconsideration, at which point he suggested that the district court was not aware of the magistrate judge's order at the time of the ruling on summary judgment. In fact, the defendants had brought the matter to the court's attention at the conclusion of the hearing on summary judgment. The court, in the absence of any contemporaneous objection or Rule 56(d) motion from the plaintiff, simply decided that it had all the facts before it necessary to decide the motions. And because Baker did not comply with the demands of Rule 56(d) in his initial opposition to summary judgment, the court was not obligated to reconsider its original order and judgment. *See Reliance Mediaworks (USA) Inc. v. Giarmarco, Mullins & Horton, P.C.*, 549 F. App'x 458, 466 (6th Cir. 2013) (unpublished). This argument has been forfeited on appeal, and that there is no reason to excuse the forfeiture in the present case. *Cf. Am. Copper & Brass, Inc. v. Lake City Indus. Prods.*, 757 F.3d 540, 545 (6th Cir. 2014).

AFFIRMED.