NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 16a0536n.06

No. 15-4088

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Sep 15, 2016
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| MARK C. BROOKES, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| MYRON SHANK, M.D., | ) | COURT FOR THE SOUTHERN |
| | ) | DISTRICT OF OHIO |
| Defendant-Appellee. | ) | |
| | ) | |
| | ) | |

Before: BATCHELDER and KETHLEDGE, Circuit Judges; and LEVY, District Judge.[*]

LEVY, District Judge. Gregory Stamper, a former inmate in the Allen Correctional Institution in Lima, Ohio, suffered from peripheral neuropathy that caused him prolonged pain, numbness, and dizziness. He hanged himself on June 1, 2011, the day after Dr. Myron Shank, his treating physician, cancelled an appointment that Stamper sought for his pain.

Stamper's Estate sued under § 1983, alleging that Dr. Shank was deliberately indifferent to Stamper's serious medical needs in violation of the Eighth Amendment. Dr. Shank moved for summary judgment, which the district court granted on the grounds that the plaintiff failed to show that Dr. Shank had acted with subjective deliberate indifference. We reverse and remand.

---

[*] The Honorable Judith E. Levy, United States District Judge for the Eastern District of Michigan, sitting by designation.

## I.   BACKGROUND

Dr. Shank moved for summary judgment, so the evidence is considered and all reasonable inferences drawn in the light most favorable to Stamper's Estate. *See Santiago v. Ringle*, 734 F.3d 585, 587 (6th Cir. 2013).

Gregory Stamper first began experiencing pain, numbness, and tingling in his back, hands, and feet in March 2008.  His symptoms intensified and spread, and in April 2009, Stamper was sent to the Ohio State University Medical Center where he was diagnosed with generalized sensory and motor peripheral neuropathy.  In June, Stamper continued to complain of pain in his hands and the thoracic area of his back.  In November, Stamper requested that all future medical trips off site be cancelled because of the pain he experienced during transfer. During this time, he was prescribed tramadol, an opioid painkiller used to treat moderate to severe pain, gabapentin, a nerve pain and anticonvulsant medication, and indomethacin, an anti-inflammatory pain medication.

In August 2009, Stamper was investigated for misuse of medication when two pills were discovered in his cell.  Stamper stated that he had traded a bag of cookies for the pills, because the medication he had been receiving was insufficient to treat his unbearable pain. A disciplinary hearing was held, and the hearing officer concluded that Stamper had not "cheeked" (*i.e.*, had not pretended to swallow but instead held in his mouth) his prescribed medication.  The officer gave Stamper a verbal reprimand and recommended that Dr. Shank give Stamper his medication in crushed or liquid form.

Instead, Dr. Shank cancelled Stamper's prescriptions for tramadol and gabapentin, and prescribed him carbamazepine, an anticonvulsant and mood stabilizer used to treat pain, seizures, and bipolar disorder.  Stamper told Dr. Shank that only the tramadol and gabapentin had been

effective at treating his pain. Dr. Shank wrote in Stamper's medical file that "[h]e keeps insisting that he is being 'denied medical treatment' because I offer alternative drugs. I also pointed out that pain 'hurts,' but will not 'hurt' him." In May 2010, Dr. Shank again prescribed gabapentin on the condition that Stamper agree to be evaluated by recovery services.

In March 2011, Dr. Shank contacted recovery services and was told that Stamper had not been involved in any substance abuse programs. Dr. Shank then reviewed the notes from Stamper's meeting with recovery services in July 2010. According to the recovery services screener, Stamper had no need for substance abuse treatment, which Dr. Shank testified was noted in Stamper's medical file. The screener also noted that Stamper said his pain was too great to attend any meeting with regularity and observed that Stamper's fingers were curled up as a result of his pain. Dr. Shank again cancelled Stamper's gabapentin prescription.

On May 24, 2011, a nurse referred Stamper for an MRI and set up an appointment for Stamper to see Dr. Shank due to Stamper's continued complaints of pain. Stamper filed a Notice of Grievance with the Health Care Administrator stating that it was too painful to travel off site for an MRI without adequate pain medication. On May 31, 2011, Dr. Shank cancelled Stamper's appointment, writing that Stamper "has failed, misused, or been noncompliant [with] terms for Rxs for pain. No other option available." Stamper hanged himself the next day.

After Stamper's death, the warden of the Allen Correctional Institution revoked Dr. Shank's security clearance. The subsequent prison investigation of Dr. Shank resulted in a finding that he had been deficient in the provision of medical care and had a propensity to discontinue or change medication or treatment without effective communication and patient education.

On July 26, 2011, Dr. Shank appeared before the State Medical Board of Ohio to address disciplinary charges related to his private civilian medical practice. Dr. Shank argued to the board that his standard for discontinuing narcotic medication due to misuse by prisoners was "far more stringent" than the standards found in any of the medical literature. Dr. Shank was disciplined for both overprescribing narcotics and continuing to prescribe narcotics to his civilian patients whom he had reason to know were either selling or abusing the drugs.

Dr. Shank testified during his deposition that Stamper told him that Stamper and Stamper's brother-in-law, a Mr. Stokes, had a plan to get money for Stamper's estate by suing Dr. Shank. According to Dr. Shank, the conversation was not documented because the Health Care Administrator, Pam Neal, refused to give him Stamper's file. However, Neal was no longer employed at the prison at that time. LaShena Manley, the Health Care Administrator on the date in question, said she did not refuse to give Dr. Shank Stamper's file. To date, no Mr. Stokes associated with Stamper has been identified or located.

Stamper's Estate sued under 42 U.S.C. § 1983, alleging in relevant part that Dr. Shank violated Stamper's Eighth Amendment right to receive adequate medical care for his serious medical needs. The district court granted Dr. Shank's motion for summary judgment on the grounds that Stamper's Estate failed to set forth sufficient evidence for a jury to find that Dr. Shank acted with subjective deliberate indifference.

## II. ANALYSIS

Stamper's Estate argues that Dr. Shank was deliberately indifferent to Stamper's excruciating pain. Under the Eighth Amendment, inmates have a right to adequate medical care for their serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). The district court held that Stamper's medical condition objectively put him at a substantial risk of harm.

The parties do not dispute this, so we do not disturb that holding. The issue is whether Stamper's Estate can prove that Dr. Shank acted with subjective deliberate indifference to Stamper's substantial risk of harm. *See id.* At the outset, we make clear that the "substantial risk of harm" in this case is the risk that Stamper would be "exposed to undue suffering" due to his pain if untreated. *See Scott v. Ambani*, 577 F.3d 642, 648 (6th Cir. 2009) (quoting *Westlake v. Lucas*, 537 F.2d 857, 860 (6th Cir. 1976)).

To establish that Dr. Shank acted with subjective deliberate indifference, Stamper's Estate must "allege facts which, if true, would show that [Dr. Shank] subjectively perceived facts from which to infer substantial risk to [Stamper], that [Dr. Shank] did in fact draw the inference, and that he then disregarded that risk." *Harris v. City of Circleville*, 583 F.3d 356, 368 (6th Cir. 2009). As for a defendant's subjective knowledge, "a factfinder may conclude that a [defendant] knew of a substantial risk from the very fact that the risk was obvious." *Id.* Because of the two-year statute of limitations in Ohio, this case boils down to whether Dr. Shank acted with subjective deliberate indifference when he cancelled the appointment that Stamper sought for his physical pain.

First, a jury could conclude that Dr. Shank "subjectively perceived facts from which to infer substantial risk to [Stamper]." *Id.* Dr. Shank knew that Stamper had been diagnosed with peripheral neuropathy. Even though Stamper refused to undergo additional diagnostic procedures, such as another MRI, shortly before Dr. Shank cancelled his appointment, this was years after Stamper's peripheral neuropathy diagnosis. "[V]erifying medical evidence is not required to state a claim for deliberate indifference where, as here, the seriousness of [a] prisoner's need for medical care is obvious . . . ." *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890,

900 (6th Cir. 2004). There is sufficient evidence for a jury to find that Dr. Shank knew of facts from which he could infer a substantial risk of harm to Stamper.

Second, a jury could conclude that Dr. Shank "did in fact draw the inference." *Harris*, 583 F.3d at 368. Dr. Shank prescribed serious pain medications to Stamper for a number of years for his symptoms. And Dr. Shank noted, after discontinuing Stamper's prescription for tramadol and gabapentin, that he responded to Stamper's complaints of severe pain by saying "pain 'hurts,' but will not 'hurt' him." Again, the issue is whether Dr. Shank could draw the inference that Stamper would be "exposed to undue suffering" due to his pain. *Scott*, 577 F.3d at 648. There is sufficient evidence for a jury to find that Dr. Shank drew the inference that Stamper was at such risk.

Third, a jury could conclude that Dr. Shank then "disregarded that risk" by cancelling the appointment with Stamper. *Harris*, 583 F.3d at 368. Over his years of treatment, Stamper told Dr. Shank on a number of occasions that tramadol and gabapentin were essentially the only pain medications that worked for him. When Dr. Shank cancelled the appointment, he knew that Stamper was not on effective medications for his pain, yet concluded that "[n]o other option [was] available."

There are different possible explanations as to why Dr. Shank cancelled the appointment. Perhaps Dr. Shank knew that gabapentin was an effective medication but deliberately refused to consider whether it was safe to prescribe. Or perhaps Dr. Shank reasonably believed that Stamper's pain was not unbearable or that prescribing Stamper gabapentin at medically permitted levels would not be effective. It is not our place to decide which of these motivated Dr. Shank. There is sufficient evidence to permit a jury to conclude that Dr. Shank was

motivated by the first, and thus recklessly disregarded the risk that Stamper would be "exposed to undue suffering." *Scott*, 577 F.3d at 648.

Dr. Shank argues that he could not have been deliberately indifferent because Stamper engaged in "drug seeking behavior." To be sure, courts have found that prison officials' "[e]fforts to wean a prisoner off opiate or narcotic pain medication to which he has become addicted are not an unconstitutional form of punishment but a medical judgment that the long-term harms of addiction and abuse outweigh the short-term benefits of reduced subjective pain." *Baker v. Stevenson*, 605 F. App'x 514, 519 (6th Cir. 2015) (citing cases). But there is at the very least a question of fact as to whether Dr. Shank was actually motivated by a sincere concern that Stamper was a drug seeker.

Dr. Shank conditioned Stamper's receipt of gabapentin on Stamper's agreeing to be evaluated by recovery services. Stamper satisfied the condition, and Dr. Shank testified that he reviewed the notes from the evaluation and cancelled Stamper's prescription anyway. Dr. Shank was not entitled to summary judgment on whether he was motivated by "a subjective, good-faith belief" that Stamper was a drug abuser. *Cf. id.* A jury could find that Dr. Shank recklessly disregarded the risk to Stamper when he cancelled his appointment, knowing that Stamper was not on any effective medication at the time.

Viewing the evidence in the light most favorable to Stamper's Estate, a reasonable jury could conclude that Dr. Shank "subjectively perceived facts from which to infer substantial risk to [Stamper]"—that is, that Stamper would be subjected to undue suffering due to his pain if untreated—"that he did in fact draw the inference, and that he then disregarded that risk." *See Harris*, 583 F.3d at 368; *Scott*, 577 F.3d at 648. He is not excused by stating that Stamper was a

drug seeker when there is evidence that Dr. Shank was not actually motivated by this concern. It is for the jury to decide whether Dr. Shank is credible.

### III.    CONCLUSION

The district court's judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.